A07A0425. WILLIAMS v. THE STATE.
(645 SE2d 676)

RUFFIN, Judge.

A jury found Chalmus Williams guilty of obstructing a law enforcement officer and driving with a suspended license. Williams appeals, challenging the sufficiency of the evidence, asserting that the trial court improperly charged the jury on obstruction and erred in admitting similar transaction evidence, and alleging ineffective assistance of counsel. For reasons that follow, we affirm in part and reverse in part.

1. "On appeal from a criminal conviction, we view the evidence in [a] light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence."[1] We neither evaluate witness credibility nor weigh the evidence, and we affirm the verdict if there was sufficient evidence "for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt."[2] Viewed accordingly, the evidence shows that at approximately 4:30 a.m. on January 27, 2005, Officer Kessler of the City of Perry Police Department was on duty in a marked patrol vehicle when he saw a driver in a light brown Ford Aerostar van drive past him. Officer

---

[1] (Punctuation omitted.) *Dawson v. State*, 271 Ga. App. 217 (1) (609 SE2d 158) (2005).

[2] (Punctuation omitted.) Id.

Kessler knew that a similar vehicle, owned by Connie Davis, was sometimes driven by Williams, whose driver's license had been suspended.

Officer Kessler followed the vehicle in order to determine if Williams was driving. While following the vehicle, Officer Kessler did not activate his emergency lights or attempt to stop the vehicle. The vehicle accelerated and turned into a trailer park where Williams lived. The driver then drove off the road behind the trailer in which Williams lived, and the male driver fled the vehicle, leaving the engine running. The driver was wearing blue jeans, a blue jacket, and a hat. Officer Kessler believed, based on the driver's height and weight, that the driver was Williams, although he did not see the driver's face. He attempted to pursue the driver on foot, but stopped because he did not have a flashlight. Officer Kessler never ordered the fleeing driver to stop.

Officer Kessler then went to the residence Williams shared with Davis. Davis stated that she had gone to bed and that when she awakened, both the van and Williams were gone. While Officer Kessler was still at the residence, Williams arrived, breathless, riding a bicycle. He was wearing blue jeans, a blue jean jacket, and a hat, which appeared to be the same items that the driver of the vehicle had been wearing. Williams told Officer Kessler that he had loaned the vehicle to a man named Larry, but provided no last name or address for such person. Williams was arrested and charged with obstructing Officer Kessler in the lawful discharge of his official duties by fleeing and driving with a suspended or revoked license.

Before trial, the State notified Williams of its intent to present similar transaction evidence in the form of seven instances of driving with a suspended license, all of which occurred in Perry or Houston County between December 23, 2002 and July 6, 2005. Evidence of these incidents was presented at trial. In two of the incidents, Williams left his vehicle and fled on foot when he noticed a law enforcement officer following him. In several of the incidents, Williams was driving Davis's Ford Aerostar van or another vehicle owned by Davis. Most of the incidents occurred in the late evening or early morning hours. At trial, Williams was found guilty of obstructing a law enforcement officer and driving with a suspended license.

Williams contends that there was insufficient evidence either that he was driving or that he obstructed Officer Kessler by fleeing. The evidence that Williams was driving the vehicle, while circumstantial, nonetheless was sufficient to support his conviction for driving with a suspended license. The vehicle involved was owned by a woman with whom Williams lived, and Williams had driven the vehicle on other occasions while his license was suspended. Furthermore, the vehicle was driven to Williams's residence by a driver that

Officer Kessler believed to be Williams. And after Officer Kessler found the vehicle abandoned at Williams's residence, Williams arrived on the scene wearing clothes similar to those of the driver.[3]

However, we agree that the evidence was insufficient to support Williams's conviction for obstruction. In order to prove obstruction, the State must establish that Williams "knowingly and willfully obstruct[ed] or hinder[ed] any law enforcement officer in the lawful discharge of his official duties."[4] Flight from a police officer can constitute obstruction, if the defendant "knew or should have known that he was being pursued by a police officer."[5] Here, Officer Kessler followed Williams in a marked patrol car, but he never activated his emergency lights or siren or attempted to stop Williams.[6] When Williams ran, Officer Kessler had not spoken to him or detained him, and he did not order Williams to stop once he began running.[7] Under these circumstances, where Officer Kessler gave no indication of pursuit by activating his lights or siren or even by calling out to Williams to halt, Williams's conviction for obstruction must be reversed.[8]

2. Williams alleges that the trial court should not have admitted evidence of seven similar transactions, as this was an "excessive number" to show course of conduct and raised an improper inference about Williams's character. We will uphold the trial court's decision to admit similar transaction evidence unless it is clearly erroneous.[9] Similar transaction evidence is admissible if the State shows: (1) that it seeks to introduce the evidence not to raise an improper inference as to the defendant's character, but for an appropriate purpose; (2) that there is sufficient evidence to establish that the defendant committed the act sought to be introduced; and (3) that there is

---

[3] See *Wheeler v. State*, 281 Ga. App. 158, 159 (1) (635 SE2d 415) (2006); *Nolan v. State*, 255 Ga. App. 63, 63-64 (1) (564 SE2d 464) (2002).

[4] OCGA § 16-10-24 (a).

[5] *Veal v. State*, 226 Ga. App. 897 (487 SE2d 696) (1997).

[6] See *Phillips v. State*, 269 Ga. App. 619, 631 (11) (604 SE2d 520) (2004) (defendant entitled to directed verdict on obstruction where "officer never had the opportunity to turn on his emergency lights or siren when following [defendant's] vehicle, to issue a verbal command within earshot of [defendant], or otherwise to communicate a command for [defendant] to halt"); compare *Prather v. State*, 279 Ga. App. 873, 876-877 (2) (633 SE2d 46) (2006) (conviction for obstruction authorized where defendant drove away after officer parked behind him, activated blue lights, approached vehicle, and instructed defendant to place hands on steering wheel).

[7] See *Porter v. State*, 224 Ga. App. 276, 279 (2) (480 SE2d 291) (1997) (finding evidence of obstruction insufficient where suspects in attempted motor vehicle theft fled at sight of approaching police vehicle and officers who gave chase never called out to suspects to halt).

[8] See id.; *Phillips*, supra.

[9] See *Settle v. State*, 239 Ga. App. 476 (521 SE2d 423) (1999).

sufficient similarity between the act sought to be introduced and the crime charged "so that proof of the former tends to prove the latter."[10]

The State sought to introduce the similar transactions to show course of conduct, and the jury was given a limiting instruction to that effect. Proof of course of conduct is an appropriate purpose for the introduction of similar transaction evidence.[11] The similar transactions were sufficiently similar to the charged crime as all of the similar transactions occurred in the same general area, and most of them likewise occurred in the late night or early morning hours.[12] Two involved the same vehicle as in the charged offense. And all of them showed Williams's bent of mind to drive while his license was suspended.[13] We therefore conclude that the similar transaction evidence was more probative than prejudicial, and the trial court's decision to admit it was not clearly erroneous.[14]

3. Williams argues that his trial counsel was ineffective because "he failed to adequately prepare for trial, failed to have essential proceedings reported, and failed to object and move for a mistrial when prejudicial evidence and argument were made by the State." In order to show ineffective assistance of counsel, Williams "must prove that counsel's performance was deficient and that the deficient performance so prejudiced [Williams] that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different."[15] We will affirm a trial court's ruling on a claim of ineffective assistance of counsel unless the ruling is clearly erroneous.[16]

(a) Williams asserts that his trial counsel did not adequately prepare for trial because he only met in person with Williams once before trial, he did not interview any witnesses other than Connie Davis, and he did not file any written requests to charge the jury. We disagree.

We note that "there exists no magic amount of time which counsel must spend in actual conference with his client."[17] Trial counsel testified that he had periodic telephone conversations with Williams

---

[10] (Punctuation omitted.) *Carter v. State*, 269 Ga. App. 363, 364-365 (604 SE2d 210) (2004).

[11] See *Hill v. State*, 279 Ga. App. 666, 667 (1) (632 SE2d 443) (2006).

[12] See *Johnson v. State*, 279 Ga. App. 98, 100 (2) (a) (630 SE2d 612) (2006).

[13] See *Shockley v. State*, 256 Ga. App. 892, 896 (5) (570 SE2d 67) (2002) (in DUI case, evidence of previous DUI was admissible regardless of circumstances surrounding it because "unlike crimes against persons or property which might occur under various factual circumstances, it is the simple act of driving while under the influence that establishes the commission of the crime").

[14] See *Settle*, supra.

[15] *Davis v. State*, 267 Ga. App. 245, 245-246 (1) (599 SE2d 237) (2004).

[16] See id. at 246; *Chapman v. State*, 273 Ga. 348, 350 (2) (541 SE2d 634) (2001).

[17] (Punctuation omitted.) *Harris v. State*, 279 Ga. 304, 307 (3) (b) (612 SE2d 789) (2005).

from the time of his arraignment in April 2005 until the trial in December 2005, and he also sent Williams letters regarding the case. He filed a motion for discovery, met with the prosecutor and reviewed the prosecutor's file, and reviewed the similar transaction files. On these facts, Williams has simply not shown "how additional communications with his lawyer would have changed the outcome of his trial."[18]

Nor has Williams demonstrated that interviewing additional witnesses would have changed the outcome of the trial. Trial counsel did not interview Officer Kessler, but testified that the officer's trial testimony "was basically consistent" with his review of the file. And Williams has not even suggested what other witnesses should have been interviewed or what their testimony might have been. These "bare allegations that trial counsel should have acted differently" will not support a claim of ineffective assistance.[19]

Williams argues that he was harmed by trial counsel's failure to request the suggested pattern jury instruction on bare suspicion because that charge "would have let the jury know that they could not convict [Williams] based on a grave suspicion." But the jury was repeatedly instructed as to Williams's right not to testify, the presumption of innocence, the burden of proof, reasonable doubt, and circumstantial evidence. Because these instructions cover the substance of the pattern jury instruction on bare suspicion,[20] the trial court would have been authorized not to give the bare suspicion instruction even if it had been requested.[21] Williams therefore has not established that he was prejudiced by the failure to give this charge.[22] Accordingly, Williams has not shown that trial counsel was ineffective by failing to adequately prepare for trial.[23]

(b) Williams next contends that trial counsel was ineffective in failing to have the similar transaction hearing and voir dire reported. The harm Williams alleges is that he is "precluded from raising any potential Batson issues on appeal" because there is no transcript of voir dire. But "[a] general unspecified hope of reversible error during voir dire does not win a new trial on the ground that a record should have been made so as to accommodate a search for error now buried

---

[18] (Punctuation omitted.) *Henry v. State*, 279 Ga. 615, 616 (3) (619 SE2d 609) (2005).

[19] See *Hinkle v. State*, 282 Ga. App. 328, 329 (638 SE2d 781) (2006).

[20] See Georgia Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, 1.20.20 ("Facts and circumstances that merely place upon the defendant a grave suspicion of the crime charged or that merely raise a speculation or conjecture of the defendant's guilt are not sufficient to authorize a conviction of the defendant.").

[21] See *Howard v. State*, 263 Ga. App. 593, 596 (3) (588 SE2d 793) (2003).

[22] See *New v. State*, 270 Ga. App. 341, 345 (2) (a) (606 SE2d 865) (2004).

[23] See *Garvin v. State*, 283 Ga. App. 242, 245 (3) (b) (641 SE2d 176) (2006).

in unrecorded history."[24] Williams's failure to demonstrate harm thus dooms his claim of ineffective assistance on this basis.[25]

(c) Finally, Williams cites as ineffective assistance trial counsel's failure to object to the admission of similar transaction testimony, testimony by various police officers, and the State's argument in closing that he presented no evidence about "Larry." Based on our analysis in Division 2, Williams cannot show that he was harmed by trial counsel's failure to object to the similar transaction evidence, as "the failure to make a meritless objection does not demonstrate ineffective assistance of counsel."[26]

Williams alleges that trial counsel should have objected to testimony by police officers that placed his character at issue. Corporal Stone of the Houston County Sheriff's Department testified about two of the similar transactions. In describing his first encounter with Williams, Corporal Stone stated that he charged Williams with "[s]uspended license, and false name and date of birth." When questioning Corporal Stone about his second encounter with Williams, the State asked: "did you issue him a citation for driving with [a] suspended or revoked license?" and Corporal Stone replied: "Yes, I did. He also had an open warrant." Sergeant Sutcliff of the City of Perry Police Department testified about another similar transaction. He stated that, as a result of that incident, Williams was charged with "passing in a no passing zone[,] fleeing and attempting to elude, reckless driving, driving on a revoked license, and obstruction of an officer." Williams argues that his character was placed in issue by these statements to the extent they referred to him giving a false name and date of birth, having an open warrant, and fleeing and attempting to elude. The two statements regarding the charges against Williams, however, were made in passing and merely described the circumstances of the arrests.[27] And the statement about Williams having an open warrant falls short of placing his character in issue.[28] Accordingly, failure to object to this testimony did not amount to ineffective assistance.[29]

In closing, the State argued that Williams never identified "Larry," who he alleged was the driver of the vehicle. Williams

---

[24] (Punctuation omitted.) *Sharp v. State*, 278 Ga. 352, 353 (3) (602 SE2d 591) (2004).

[25] See id.; *Moore v. State*, 246 Ga. App. 163, 169 (9) (b) (539 SE2d 851) (2000).

[26] *Ogle v. State*, 270 Ga. App. 248, 249 (3) (b) (606 SE2d 303) (2004).

[27] See *Adkins v. State*, 280 Ga. 761, 763 (3) (632 SE2d 650) (2006) (circumstances of arrest are admissible if relevant, even if evidence incidentally puts accused's character at issue); *Davis v. State*, 275 Ga. App. 714, 719 (3) (c) (621 SE2d 818) (2005) (same).

[28] See *Jones v. State*, 270 Ga. App. 368, 370 (2) (b) (606 SE2d 592) (2004) (reference to defendant's incarceration does not place his character at issue); *Wood v. State*, 264 Ga. App. 787, 789 (1) (a) (592 SE2d 455) (2003) (same).

[29] See *Jones*, supra.

contends that this argument improperly shifted the burden of proof to him to produce evidence. But arguing that the defense has not explained certain evidence does not necessarily shift the burden of proof or the burden of coming forward with evidence to the defendant.[30] We have previously held that it was not improper for the State to ask in closing, "If there was another person driving the vehicle, where is that person?" because the remark "is not a comment upon [the defendant's] failure to testify, but was merely a suggestion that the State's proof of [the defendant's] guilt had not been rebutted."[31] We thus conclude that the State's argument here was a permissible comment on Williams's failure to rebut the State's evidence of guilt.[32] The failure to object to this argument does not constitute ineffective assistance.[33]

4. Given our holding in Division 1, we need not address Williams's contention that the trial court improperly charged the jury on obstruction.

*Judgment affirmed in part and reversed in part. Blackburn, P. J., concurs. Bernes, J., concurs in judgment only as to Division 1.*

DECIDED APRIL 27, 2007.

*Rodney E. Davis*, for appellant.
*Alan R. Tawse, Jr., Solicitor-General, Arthur J. Creque, Assistant Solicitor-General*, for appellee.

---

[30] See *Duffy v. State*, 271 Ga. App. 668, 670 (1) (610 SE2d 620) (2005).

[31] (Punctuation omitted.) *Harper v. State*, 248 Ga. App. 106, 107 (2) (545 SE2d 650) (2001).

[32] See *McCord v. State*, 268 Ga. 842, 843 (3) (493 SE2d 129) (1997).

[33] See *Ogle*, supra.