**FIFTH DIVISION**
**REESE, P. J.,**
**MARKLE and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

***DEADLINES ARE NO LONGER TOLLED IN THIS***
***COURT. ALL FILINGS MUST BE SUBMITTED WITHIN***
***THE TIMES SET BY OUR COURT RULES.***

**Sepember 29, 2020**

# In the Court of Appeals of Georgia

A20A1434. HARDEMAN v. THE STATE.

COLVIN, Judge.

After a jury trial that occurred in October 2003, Tanuioe Laquient Hardeman was convicted of one count of rape, two counts of child molestation, and two counts of simple battery. He appeals from the denial of his motion for new trial, arguing that he received ineffective assistance of counsel. He also argues that he has been deprived due process of law because of the 17-year appellate delay. For the following reasons, we affirm.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence." (Citation omitted.) *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004). We neither weigh the evidence nor judge the credibility of witnesses, but

determine only whether, after viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis omitted.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

Thus viewed in favor of the jury's verdict, the record shows that when K. T. was five years old, she went to live with her mother and Hardeman, her step-father. When she was 9 years old, K. T. made an outcry to her mother. K. T. told her mother that if she had a bad day at school that day, Hardeman would spank her bare bottom with his hand, wooden spoon, or a belt and then would do "bad touches" with her. The mother testified that she had seen blood on her daughter's underwear on one occasion and that there were several times when, against their usual practice, the door to the house would be locked when she came home from work, and Hardeman would take a long time to answer it. K. T. also told her mother that Hardeman had molested her in the car on the way to church.

 K. T. also made an outcry to her school counselor, telling her that Hardeman had frequently molested her after school and in the car on the way to church.

K. T. also made an outcry to her biological father when she visited him at his house in Tennessee over the summer. K. T.'s father then called the police, and a

2

forensic interview and sexual assault exam were conducted. The nurse who performed the sexual assault exam testified that K. T. told her that Hardeman had "messed with her private parts." The examination revealed that K. T.'s "hymenal tissues was interrupted," which was consistent with "chronic blunt penetrating trauma." The nurse noted that the injury to K. T.'s hymen was "well healed" and "consistent with a chronic injury."

K. T. testified at trial that when she was in third grade, Hardeman began whipping her with belts, sticks, spatulas, and wood on her bare bottom when they were the only ones in the house. K. T. further testified that, about the same time, Hardeman began putting his "private part" in her "private part." K. T. also explained that Hardeman had twice raped her in the car on the way to church.

1. Hardeman argues that he received ineffective assistance of counsel because his trial counsel did not adequately consult with him prior to trial, failed to conduct adequate cross-examination of several witnesses, and failed to present a good character defense. For the following reasons, we find no error.

To prevail on his claim that his trial counsel rendered ineffective assistance, Hardeman must show both that his attorney's performance was deficient and that he

was prejudiced as a result. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984).

> Under the first prong of this test, counsel's performance will be found deficient only if it was objectively unreasonable under the circumstances and in light of prevailing professional norms. And under the second prong, prejudice is demonstrated only where there is a reasonable probability that, absent counsel's errors, the result of the trial would have been different. A reasonable probability is defined as a probability sufficient to undermine confidence in the outcome. Failure to satisfy either prong of the *Strickland* test is sufficient to defeat a claim of ineffective assistance, and it is not incumbent upon this Court to examine the other prong. And although both the performance and prejudice components of an ineffectiveness inquiry involved mixed questions of law and fact, a trial court's factual findings made in the course of deciding an ineffective assistance of counsel claim will be affirmed by the reviewing court unless clearly erroneous.

(Citations and punctuation omitted.) *Green v. State*, 302 Ga. 816, 817-818 (2) (809 SE2d 738) (2018).

(a) Hardeman first argues that his trial counsel's performance was ineffective because he spent an inadequate amount of time conferring with him prior to trial. We find no error.

4

At the motion for new trial hearing, Hardeman testified that he had met with his trial counsel prior to trial, that trial counsel had secured a pre-trial release bond, and had explained the charges and evidence against him. He further testified that trial counsel met with him at least four other times prior to trial. Hardeman contends that if his trial counsel had spent more time with him, he would have learned that the victim's biological father loathed him. However, "there exists no magic amount of time which counsel must spend in actual conference with this client." (Punctuation and footnote omitted.) *Williams v. State*, 285 Ga. App. 190, 193 (3) (a) (645 SE2d 676) (2007). Further, Thomas's testimony was consistent with other testimony presented at trial. Thus, Hardeman did not prove "how additional communications with his lawyer would have changed the outcome of his trial." (Punctuation and footnotes omitted.) Id. at 194 (3) (a).

(b) Hardeman argues that his trial counsel rendered ineffective assistance by failing to thoroughly cross-examine the State's witnesses.

Specifically, Hardeman argues that his trial counsel failed to adequately cross-examine Christian Gibson (an outcry witness), Patricia Lewis (the forensic interviewer), Stacy Patterson (the counselor), Nina Sublet (the nurse examiner), and Wallace Thomas (an outcry witness) at trial. Hardeman, however, has failed to

5

establish how any failure to cross-examine these witnesses more thoroughly affected the outcome of his case.

> The failure of trial counsel to employ evidence cannot be deemed to be 'prejudicial' in the absence of a showing that such evidence would have been relevant and favorable to the defendant. Because [Hardeman] failed to make any proffer of the witness[es'] testimony under cross-examination, it is impossible for him to show there is a reasonable probability that the outcome of the trial would have been different.

(Citations and punctuation omitted.) *Bunn v. State*, 307 Ga. App. 381, 305-386 (1) (b) (705 SE2d 180) (2010). Hardeman therefore did not establish prejudice, and the trial court did not err in rejecting his claim of ineffective assistance of counsel on this ground. Id.

(c) Hardeman also argues that his trial counsel rendered ineffective assistance by failing to present a good character defense. We are unpersuaded.

Hardeman argues that although trial counsel had seven people write letters and two witnesses testify as to Hardeman's good character at the sentencing hearing, his failure to call these good character witnesses at trial resulted in deficient performance. However, "there is no indication in the record on appeal as to whether the failure to call [these witnesses] reflects some deficiency on the part of trial counsel. For

6

example, trial counsel may have been reluctant to introduce evidence which may have deprived appellants of the right to open and conclude the argument with the jury." (Citations omitted.) *Avans v. State*, 207 Ga. App. 329, 330 (2) (427 SE2d 826) (1993). Without the testimony of his trial counsel at the motion for new trial hearing, Hardeman could not prove that trial counsel's decision not to call these character witnesses was not a strategic one. Accordingly, Hardeman "has not overcome the strong presumption that his trial counsel's performance was reasonable." (Citation omitted.) *Watson v. State*, 299 Ga. App. 702, 704 (1) (683 SE2d 665) (2009). Compare *Nihart v. State*, 227 Ga. App. 272, 274 (1) (a) (488 SE2d 740) (1997) (trial counsel did not render ineffective assistance by providing good character evidence even though it opened the door to the admission of defendant's prior crimes, because this court "refuse[s] to second-guess counsel's strategic decision") (citation and punctuation omitted).

2. Hardeman argues that his due process rights were violated by a lengthy post-trial delay. For the reasons described below, Hardeman's due process claim fails because he has not demonstrated any prejudice caused by the delay.

In reviewing a trial court's ruling on a defendant's claim of due process violations, the decision of the trial court must be affirmed unless the trial court abused its discretion. *Spradlin v. State*, 262 Ga. App. 897, 901 (3) (587 SE2d 155) (2003).

Evidence adduced at the hearing on the motion for new trial demonstrated that 16 years had elapsed from conviction to appeal due to the inaction on the part of Hardeman's post-conviction attorney and the failure of the trial court to rule on his motion for new trial. Hardeman was convicted on October 14, 2003, after a jury trial. On November 6, 2003, Hardeman wrote a pro se letter to the trial court seeking an appeal. Around the same time, Hardeman sent a letter to the clerk of court, requesting to appeal his conviction and a trial transcript. On November 24, 2003, Lee Henley, the county's contract public defender at the time, filed a boilerplate motion for new trial even though he never met with Hardeman.

With no legal education or even a high school diploma, Hardeman thought he had missed his appeal. Hardeman heard nothing from his counsel or the trial court while serving his sentence. Kenneth Krontz, Hardeman's trial counsel, died on April 28, 2008. Hardeman was released in 2013.

Hardeman did not follow up with the court regarding his letters to the court or his counsel's motion for new trial during his sentence or after his release. He testified

that he did not do anything further to pursue his appeal until he received a rule nisi in the mail in March 2019. After receiving the rule nisi, Hardeman hired appellate counsel to file a particularized motion for new trial and to represent him during the motion for new trial hearing on November 5, 2019. Hardeman appealed from the trial court's order denying the motion.

At the outset, we reiterate our Supreme Court's admonition that

we do not condone this inordinate delay in the motion for new trial proceeding[.] These delays put at risk the rights of defendants and crime victims and the validity of convictions obtained after a full trial. We therefore reiterate that it is the duty of all those involved in the criminal justice system, including trial courts and prosecutors as well as defense counsel and defendants, to ensure that the appropriate post-conviction motions are filed, litigated, and decided without unnecessary delay. We recognize that all of these participants in the system sometimes have incentives, whether tactical or simply the press of other business, that weigh against working to alleviate delays in post-conviction litigation – but there are rarely good explanations for long delays. And even if long-delayed appeals rarely result in outright reversals of convictions or only retrials or resentencings, these extended and unjustified delays in resolving criminal cases make our State's criminal justice system appear unfair and grossly inefficient.

(Citations and punctuation omitted.) *Owens v. State*, 303 Ga. 254, 258-259 (4) (811 SE2d 420) (2018).

Substantial delays in the criminal appellate process implicate due process rights. See *Chatman v. Mancill*, 280 Ga. 253, 256 (2) (a) (626 SE2d 102) (2006). In evaluating whether appellate delay violated a defendant's due process rights, we evaluate the case under the four factors set forth to evaluate claims of violations of the right to a speedy trial in *Barker v. Wingo*, 407 U. S. 514 (92 SCt 2182, 33 LE2d 101) (1972). Id. at 256 (2) (a). Those factors are: (1) the length of the delay; (2) the reason for the delay; (3) whether or not the defendant asserted his right to an appeal; and (4) whether or not the defendant was prejudiced because of the delay. *Singleton v. State*, 326 Ga. App. 609, 613 (3) (a) (757 SE2d 211) (2014). And "we have repeatedly found that the failure to make a showing of prejudice in an appellate delay can be fatal to the claim, even when the other three factors weigh in the appellant's favor." (Citation and punctuation omitted.) *Mattox v. State*, __ Ga. __ (3) (840 SE2d 373) (2020).

When evaluating the fourth prong of the *Barker* test,

[t]he prejudice necessary to establish a due process violation based on post-conviction direct appeal delay is prejudice to the ability of the

10

defendant to assert his arguments on appeal and, should it be established that the appeal was prejudiced, whether the delay prejudiced the defendant's defenses in the event of retrial or resentencing. Appellate delay is prejudicial when there is a reasonable probability that, but for the delay, the result of the appeal would have been different. Furthermore, where the enumerations raised on appeal are without merit; there can therefore be no prejudice in delaying a meritless appeal.

(Citations and punctuation omitted.) *Loadholt v. State*, 286 Ga. 402, 406 (4) (687 SE2d 824) (2010).

Although we agree that the first three *Barker* factors weigh in favor of Hardeman, he has not proven the necessary element of prejudice. Hardeman argues that he was prejudiced by the post-trial delay because, by the time the trial court conducted a motion for new trial hearing, his trial counsel had died and was therefore unavailable to answer questions about his ineffective assistance claim. However, on these facts, we are constrained to follow our Supreme Court's ruling in *Mattox v. State*, __ Ga. __ (3) (840 SE2d 373) (2020). In *Mattox*, supra, our Supreme Court held that a defendant's appeal was not prejudiced by a lengthy post-trial delay because, "pretermitting whether trial counsel could have offered any evidence in support of [defendant's ineffectiveness claim]," defendant did not even make such a claim in his original motion for new trial and instead waited until 13 years later, by

11

which time his trial counsel had died, before asserting an ineffective assistance claim." Id. "As a result, there is not a reasonable probability that [defendant's] claim of ineffective assistance would be decided differently had the trial court more promptly ruled" upon the motion for new trial. Id.

Here, Hardeman's original motion for new trial, filed by the county's contract public defender in 2003, did not raise ineffective assistance of counsel. Rather, Hardeman waited until 2019, after his trial counsel's death, in order to file an amended motion for new trial raising the claim. Accordingly, as in *Mattox*, Hardeman has not shown that there was a reasonable probability that his ineffective assistance of counsel claim would have been decided differently if the trial court had timely considered his motion for new trial. Further, as evidenced in Division (1) of this opinion, Hardeman has not raised a meritorious claim of ineffective assistance on appeal and he has not shown how his trial counsel's testimony at the motion for new trial hearing would have resulted in a different result on appeal. Because Hardeman has not shown that his appeal was prejudiced by the excessive post-trial delay in this case, the trial court's ruling was not in error.

*Judgment affirmed. Reese, P. J., and Markle, J., concur.*